If I may, I'd like to reserve three minutes for rebuttal. Granted. Your honor, the government respectfully suggests that the district court, in this matter, committed an error in suppressing the evidence that was seized by the police officers who stopped Mr. Torres's car. The crux of the judge's ruling and what the appellee relies on here in contesting the government's appeal is the notion that this stop was based on an anonymous tip. And that is simply incorrect. This tip was anything but anonymous. You say it was barely anonymous. That's the phrase used in the brief. And that he did everything possible to identify himself except give his name. The key line, your honor, on page 28 of the appendix is where we present the transcript. And at the bottom, the caller says, you got a cop right in front of him and he is following the cop. I'm behind him in a green cab. The caller at that moment is telling the police exactly where he is. He clearly wants this to be informed to the police car in front so that the police car will take action with him right there. I love the line at page 21 of your brief, your honor, and you've got to be waiting for this because I think, well, I'm sorry, where he invited the police to identify an assistant saying you've got a cop right in front of him and I'm in back of him. At that moment, the brief says, the lead police car could have slammed on the brakes, blocking both the suspect and the cab, subjecting the cab driver to immediate identification and retribution from both the police and the suspect if the information proved force. You're not really seriously suggesting that to identify him, the lead police car should have slammed on the brakes and caused an accident. No, not at all. That's what it sounds like. Well, no, I trust that police officers know how to make a stop and if the dispatcher had been prompt in relaying to that unit that there was a car directly behind them with a man with a gun, the police could have executed a safe stop that would not have caused a chain accident. It's still a stop though, isn't it? It would have been a stop and it would have stopped the cab as well. So what's the difference between the stop that they finally executed and this stop? There isn't. There isn't. The stop that was executed was based on this very same information. It just was a few blocks down the road. What we're saying is that the police were entitled to make the stop and that's what the district court disagreed with us on. In the J.L. case, which is the classic anonymous tip case, purely anonymous, you have a caller, you have no idea who it is, where it is, how current the information is. The Supreme Court in J.L., in talking about an anonymous tip, says it's, quote, a call from an unknown location by an unknown caller and in his dissent in the Nelson case, which I'll come back to, Judge Ambrose focuses on that as being the definition of an anonymous tip, which he finds in that case as well, from an unknown location. We know exactly where this call is being made from and the police do at that moment. Let me just, I think we have an interesting definitional challenge here. In the arena of organized crime, we hear about anonymous juries versus in-nominate juries. Some people think there's no distinction there. I happen to think there is. I mean, when we say anonymous in this case or any other case, are we merely saying that means you don't know the person's name or you don't know the person's location as well, you don't know their function or their role? I guess in reading the briefs, I'm wondering if we're getting too hung up on anonymous tipster versus non-anonymous tipster because it seems to me there's a distinction between someone who drops a dime and says, hey, there's a guy in a street corner, white male, 6'2", trench coat, he has a gun, and then hanging up. That's quite a different situation than a pedestrian who's walking down a street, sees a crime in progress, calls the 911 on the cell phone, chases the perpetrator for three hours. In both instances, you don't know the name of the caller. The caller has disappeared into the ether. But aren't those very different situations? They are very different. And I appreciate the question, Judge Hardiman, because it's exactly what our appeal is directed at here. It is inappropriate to try to give a label of anonymous or non-anonymous and then make a Terry determination based on that. What we have to look at is the totality of the facts, including all of the circumstances. And Your Honor has just referred to some of them. Where the district court erred here, and we fault my friend Mr. Cogan's brief as well, is just trying to place a label on it and saying that once we have this anonymous label, it's no good. Well, that's completely inconsistent with this court and the Supreme Court's jurisprudence, which says there are no necessary facts that work for a Terry stop and don't work in other contexts. You look at the totality. And when you look at the totality here, you have to take into account not what the label is, but the fact is this is a citizen reporting criminal activity that is happening at the same time. He's following the car. He's giving the information as he follows the car. He's not trying to be anonymous. He's not refusing to give his identity. Rather, he's telling the police exactly where he is. And even when the first police car peels off, he stays with the car so he can continue to tell the dispatcher where he is. Those are the facts we need to look at. Why didn't you offer any evidence? You could attract this fellow down. You could attract the cabbie down. You know he works for Avant Garde Cab Company. Presumably you knew what his cell phone was because he called on a cell phone. Why didn't you marshal any of that evidence at the hearing? We certainly could have tried, Your Honor. I can't speak to what was done or not done. It's not in the record. The fact is, it's not in the record. We don't have that information. But this court addressed that in Valentine. In Valentine, the same question came up where you had somebody who ran up to the officers, gave information on the street, and refused to give his identity when asked and left. And this court said, we're not going to second guess what the police did, and we're also not going to focus on what wasn't done. What we are going to focus on is, is there enough reliability in the information that was given? That's how we're presenting the case to this court, based on the record that we have. And based on the record we have, there are any number of indicia of reliability here. Some of them found in the Valentine and Nelson cases, in which the stops were affirmed, and many factors not there. Go through the indicia of reliability. Yes, Your Honor. Well, first of all, you have a contemporaneous account here, which this court found significant in Nelson. He's reporting a crime that he just saw, and he's reporting the continuing movements of the person he saw commit the crime. He's reporting criminal activity. This court in Valentine and Nelson found that very significant. JL, you just have an accusation of possession. The man has a gun. That means very little. Gun possession is very often legal. But what was significant in Valentine and Nelson, and significant here, is this reporter was saying that this man assaulted somebody with a gun. And that's something that this court has said the police should respond to. In the Nelson case, there was a second call that gave the same information via 911, and we found that that would not have been enough. That's right, because there weren't the indicia that were found in the first call. And the indicia in the first call was the fact that it was likely to be an informant, someone who asked for an officer by name, someone who they could pin down as being the tipster. Right, and you could argue, Nelson- We don't have that here. Well, but I would suggest that this case, as I continue to go through my short list here, this case is stronger than Nelson, because in Nelson, you could argue, what you certainly have is a criminal on the phone. Whoever it is, whether they're an informant or not, it's a drug dealer who's calling to report another drug dealer. He says, they're running our pockets, they're stealing from us. That should take you down a notch on the reliability scale. I would have thought that you'd be arguing that that would make it more reliable because these are eyewitnesses involved. Well, they're eyewitnesses, but they're people of questionable credibility in normal judicial proceedings. And so, we'd have to acknowledge, as the government did in that case, that these aren't stellar witnesses, but they are people who are giving contemporaneous information. This case is stronger. This case, you clearly have a concerned citizen. He has a legitimate employee, he's obviously the driver of a cab, he's giving the information. No axe to grind, right? No axe to grind. And not only that, but if you look at the transcript, it looks very clearly that he can tell from what he says that he's an experienced driver who knows where he is, knows what's going on. He sounds like a law enforcement officer. He either has law enforcement background or he's a very experienced cab driver. I haven't heard language like that since I used to listen to some of these programs when I was a kid before I got involved with all these commercial cases. Well, he either has law enforcement background or he's a very experienced cab driver. He's heading to Philadelphia, heading north on Broad, he's got a license plate, F Frank Victor Abel 7726. These are facts that the police can rely on in deciding whether there's reliability. It goes to the core of this court's rulings. Oh, absolutely. The question here, we're not dealing with a high threshold here. We're dealing with the question of, is there reasonable suspicion? Is there something more than an incoherent hunch to allow the police officers to stop for the purpose of investigation? That's what we're dealing with here. We're dealing with a person's observation that someone had drawn a gun on the quote unquote thumb. Now, Justice Ginsburg specifically declined for the court to adopt a firearm exception. Isn't that really what we're talking about here? He has a gun? No, not at all. We're talking about somebody who pointed a gun at another person. Again, it's the same distinction that this court made in Valentine. The court made very clear it was not relying on any firearm exception, which does not exist. In Valentine, wasn't that a case where possession of a gun was not illegal in the Virgin Islands? No, that's Ubilis. That's Ubilis. The court in Valentine distinguishes Ubilis because in Valentine, the guy on the street who refuses to be identified says, that guy over there has a gun and he's messing with people. This court says there's no firearm exception here, but there is an expectation that the police will act when there's an allegation that the gun is being used. This can't be distinguished in this situation. In fact, no one tried to distinguish this case on that basis. How about the white case that's referred to NJL, in which the Supreme Court, and I'm looking at what Justice Ginsburg had to say about it, indicates that with respect to an incident where a woman was carrying cocaine, which in and of itself is a criminal offense, right? Right. It said that, quote, only after police observations showed that the informant had accurately predicted the woman's movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore credit his assertion about cocaine, unquote. Does that impose some sort of predictive threshold upon indicia of reliability that unless you can say something that would allow the police to make a prediction or to see a prediction be fulfilled, that short of that, it's not reasonable? This court answered that question, Your Honor, in the Nelson case. That argument was made. And what we're left with, according to this court, and I think it's correct, is that predictive information is definitely a factor showing reliability, but it is not a necessary factor. There are no necessary factors. What this court has said very clearly over and over is we look at the totality of the circumstances in deciding was it sufficiently reliable such that you had this level of reasonable suspicion. In Nelson, you don't have predictive information either. You have what you have here, a very precise statement as to what car you can find and what people are in it and what they're doing. This court said that holds some weight too. If we had predictive information, of course, we would argue that as a factor also. But the last thing I'll say, I know my time is up if I may, is that if you look at the district court's decision here, it did look to things like predictive information and whether it was a high crime area and other factors that this court has found relevant as if these are the sine qua non of reliability. And they're not. What is necessary is to look at the totality of the circumstances. What, briefly, summarized for us your indicia of reliability? Well, the key one is that no effort to be anonymous. A citizen who is making a complaint, asking for a police response, and making no effort to be anonymous, as opposed to all these other cases where someone refused, that is something the police can rely on. And this court has said we expect police officers to rely on in responding to allegations. That's the key thing in this case. There are many other factors that I've listed in our brief about this particular call, about how it reported current criminal activity that's very significant and ties into things this court has said. But where you have somebody who tells you, I can tell you exactly where this person was. He was on South Street heading eastbound between 12th and 13th after coming off abroad. If we know and the police know exactly where this person is, that's something we expect the police to rely on when a known citizen is making a complaint and asking for an investigation. That's what's being asked for here. Thank you very much, Your Honor. I'm Dennis Kogan. I represent Mr. Torres. We know that the informant is reliable in hindsight, based on what showed up. During the search. But of course, that's not part of the calculus. In answer to what Judge Hardeman asked just a few minutes ago, about surely they could have found out who this person was. Did he call from a traceable phone? The record does not reflect that he had a traceable phone. He did not give his name. This person was begging to be identified, as Mr. Zalzmer says. He didn't give his phone number. But the record, contrary to what my friend said, Mr. Zalzmer, does show that they made efforts to find out who this person was. Where the government's brief leaves off in the statement of facts, the bottom of page 29 of the appendix, where the informant says that I'm going to peel off now. The appendix on page 30 through 36 shows exactly what efforts the police did make. Because the real question is not whether we define it as anonymous or some other definition. Was the person readily identifiable? And we find out that before the man has stopped, just a couple of minutes after the call went out, just before 3.02 in the afternoon, a police officer on the street says, perhaps foreshadowing the issue that's before you now, do we have a complainant on this? And the answer from the dispatcher is negative. The police officer on the street says, let's start all over again, let's contact central detectives in the South Street sector. And then the dispatcher said, everybody's got it now, you're on J band. After the arrest is made, the question is asked again, do we have a complainant? So should the lawfulness of this depend upon whether the police thought in the moment to ask for the name? The Supreme Court seems to say in Florida v. J.L., in making the contrast with the White case, that in J.L. there was a quote, bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. Here you've got an informant who was apparently prepared to be accountable, said where he was, said where the nearest police officer was, said exactly how he knew what he knew, and gave the detailed real-time information about why he knew what he knew. Isn't that enough for us to say, well, J.L. just doesn't apply here? Well, it depends. It depends on what you want to believe. In other words, we know later on, by baseline hindsight, of what he was saying is true. But how do we know that he was in a cab? How do we know there was a police officer in front of the car that housed the defendant in this case? How do we know any of the things that are said in this case? We would know it if there was some corroboration, if the police find out if there was, in fact, a police officer. Do they have to corroborate each of those things before they can execute a stop in an emergent situation? Yes, exactly. That's a question, not a statement. Yes, they do. They have to corroborate something. When you're dealing here with an anonymous informant, and that's exactly what this is, regardless of how eager the prosecutor thinks this person wanted to be identified, what you have to do when you have an anonymous informant that carries little indicia of reliability, you have to do more. You have to investigate further. You have to corroborate. The police officers who were involved in the search in this case were in an unmarked car. How could they have corroborated here? You've got the police car in front, you've got the cab, making the calls. We assume. We assume the person's in a cab. He's giving a play-by-play of an emergent situation. What would you have had them do before they could stop the lead car? Perhaps nothing, because there's not a reasonable suspicion at that point because it's an anonymous tipster. Well, you're putting the rabbit in the hat there, aren't you? What would you have had them do? I would have them surveil the person. I would have them look and see if the person's doing anything suspicious. I would ask them to see if there's anything at all that corroborates what is at that point a purely anonymous tip. That's always been the question that's posed in all of these matters. What would the police have done and should they have done in J.L.? You just said, again, a purely anonymous tip. That's one of the issues we have to deal with, don't we? You can't assume it away by saying it's purely anonymous, because there's evidence in the record, and your opposing counsel has pressed this on this point a bit, that shows this wasn't purely anonymous. This was somebody who was perfectly happy to have people know who he was, told, said who he worked for, said what car he was in, said where he was, said there's a cop right in front of me, which, and it appears, wanted the cop in front to stop, which implies he was prepared to be there. I don't want to read too much into it, but it almost sounds like the guy thought of himself as not just a good citizen, but a quasi-police officer. He was ready to jump out of the car and help him be arrested, practically. If you've got a circumstance like that, is it really fair to say this is, quote, a purely anonymous tip? Yes, it is. It is simply because there's nothing on this record, nothing whatsoever, that this person is readily identifiable in any way. It is very clear in this case that they couldn't find out who this person was, despite efforts that were made. They'd want to know who this person is. They couldn't. Couldn't. I don't know if the record said they couldn't. They didn't. Well, they put it out over J-Ban. They notified all the police in the sector. After it was over, when they would want to find this person because he was an eyewitness to a crime earlier, they couldn't find the person. We don't know whether this person was in the cab. If you put aside what we know in hindsight, we don't know if this person was in the cab. We don't know any corroborations. There was a police officer right in front of where the car was that was stopped in this case. When the question was asked before, or the statement was made by Mr. Zalzmer and Nelson, the person was less reliable because the person was a criminal. Who do we know this person in the cab, the alleged cab was? We don't know whether the person had a criminal record or anything else like that. But you're not suggesting that before they can make a stop, they not only have to identify the person, but find out whether he has any record. No, that wasn't my argument. That was Mr. Zalzmer's argument about Nelson. Nelson involved the case. He specifically said Nelson involved something less reliable. And Nelson, the person called a thumb number. They could instantaneously determine at least as to that one indicia, that he would not have called that number unless he was a relative of an officer or an informant. That's right. And he asked specifically for an officer. That's right. That's correct. And that officer would have done it. So they had, I mean, this is not a beyond a reasonable doubt standard we have to apply here. Which I think is what you're almost suggesting. They have to just nail this guy down and find out exactly what his background is. They have nothing. I'm sorry. I'm not so sure they have nothing. If I read the decision of the trial judge correctly, he relied on the fact that there's no predictive value here. That's right. Two questions on that. Anytime you're reporting a crime that has already occurred, query what kind of predictive value you can have other than to show, well, he brandished a gun at the Hess gas station, so presumably if we tail the guy for a while, in only a matter of time, he's going to brandish the gun on someone else. That doesn't strike me as logical. But even if there is a requirement of predictive value, what about the fact that this car was located in a matter of very few minutes in precisely the location region as described in the play-by-play description of the cab driver? Isn't that... If this guy was trying to get someone in trouble or he was fanciful or incredible, how could they have come upon the BMW with the license plate precisely in the area that he was tailing them in? Because that's exactly what the jail line of cases speak to. That's something that anybody could have observed. What you've done is you've identified somebody, you've described somebody at a specific place, you've described a determinate person. But that happens in any instance. When I'm walking down a street, when I walk out after this argument for lunch and I see a purse snatching, I can't report it? If I chase the guy and I lose him, I mean, the police can't follow that man in pursuit. They need to come and interview me while the guy goes home and disappears. They need to... Well, now who are you? Oh, I guess we deem you reliable. Now we can go arrest the guy? Isn't that carte blanche for people to evade crimes? The question is, it depends on how you did it. If you called on the telephone and they had no idea who you were, yes, that presents a problem for the police. If it's a face-to-face encounter like it was in Ballantyne, where the police are in a position to assess the credibility of... Say I'm on a cell phone. I say, I'm Bob Jones and here's my phone number and I just saw a purse snatching and I'm chasing the guy down the street, but he's pretty fast and I think I'm going to lose him in a few blocks. Here's where he's going. Can't they tackle that guy three blocks ahead? Yes, that's an important consideration because you're not anonymous. You've given your name and you've given your phone number. But they don't know who Bob Jones is. They don't know whether I'm reliable. I might be a rival gang member of that guy. He might not be Bob Jones at all. That's true. Because you're right, the standard is not beyond any doubt. It's what's reasonable under the circumstances. When you have a phone call like that under those circumstances, what you look to is whether or not the person is reasonably identifiable. For example, in the case that the government cites as being most like our case, the one from the Fourth Circuit quarrels, which is nothing like this case at all, the person makes a phone call, the person tells the dispatcher that the guy walking down the street has a gun, gives the person's name, says the person murdered my brother, but he beat the case, and gives the name of the agent from the federal government who said, if you ever see this guy again, since he's wanted on a warrant, please give us a call. The government says that that's most like our case here. You don't need Sherlock Holmes or even Catherine Clouseau to figure out who that person is. Just do a records check and find out what case he beat that was a murder case. The government says this case is not like Reeves in the Fourth Circuit that was the subject of the 28-J statement that the government filed. Reeves is exactly like this case. I distinguish those well, but I guess what I'm driving at is, I see a distinction between a crime that has very, very recently occurred or is in progress. I see a distinction in these types of cases from a case like J.L., where some guy is just standing on a corner, and someone calls and says, basically, this guy's a criminal, why don't you stop him? I mean, that's I guess these possession cases seem to me to be different than an assault that's in progress. But that's not J.L. J.L. doesn't say there's a guy on the corner who's a criminal. He says the guy's got a gun. No, he says he has a gun. I mean, if the guy in J.L. says there's a man on the corner, he's a white guy in a plaid shirt, and he's waving a gun in the air, then that's not a tricky situation, right? If he says there's a white guy on the corner in a plaid shirt, and he's got a gun, and the gun's concealed, you're running the risk of intrusions on citizens. You have no idea that that's illegal. But when that same guy calls and says, I'm looking out my window, and there's a white guy in a plaid shirt, and he's got a gun in the face of a homeless person who's begging, and then I converse with the 911 dispatcher for another 45 seconds about what's going on there, isn't that radically different than J.L.? I really don't think so. And I don't think so because if when the police get there, they don't corroborate anything at all about that tip, it is precisely what Judge Becker said in Roberson. Any one of us can be the subject of a call like that. I can make somebody suspect and have them searched all day long. I can make phone calls and say there's a person on the corner, I saw him with a gun, and you can get searched, and I can get searched at any time. You don't know who I am, I can even say I'm in a yellow cab. And I can have you searched, or anybody else in this room searched at any time. Assume that's true. Is it relevant to what we're talking about here, which is, you seem to be making the distinction between giving a name and not giving a name. And Judge, is that right? Yes. But Judge Hardiman's point I think is well taken, which is, I say I'm Bob Jones. What makes my saying I'm Bob Jones any more believable than saying I'm driving a green taxicab. I'm driving for an on-the-guard company. You're right. If in fact that there's some way, any way at all, even by a traced phone, a caller ID on a phone, to show that in fact the person who says I'm calling for a particular phone number and that's my name, it's something more. It's something more than something like this which is purely anonymous. Your position is, then, that any tip is anonymous until it can be verified. Until you can pin down and say, he said he was Bob Jones, but until I see he's Bob Jones, he's not Bob Jones. He says he's driving a cab, but until I can verify that employment, he's not really driving a cab. In other words, the limit of your argument is no tip is basis for reasonable suspicion until the police can verify who the caller is or some identifying information. Short of that, it's anonymous. Or some other indicia of reliability like future predictive behavior reflecting insider information about a person's agenda and where the person may go. But clearly, you're right, that you've got to do more than what you have in this case. This is not like, for example, the cases where it's face to face and the person is right there at the scene and the police don't know who that person is. You might remember in Valentine, by the time the defendant got to this court as the appellant, the lawyer argued we don't really know if the person was readily identifiable because he left the scene. And this court said the record doesn't verify that. It doesn't confirm that at all. Here, the record does confirm it. They made yeoman efforts to try to find out who this guy was because the complainant, in fact, the officer said, does anybody have a complaint in here? And they couldn't find anybody. At all. Mr. Zapp. Thank you, Your Honor. Just briefly, one other point here, I know the court is very familiar with it, is that this is an objective test. The test here is would a reasonable officer, knowing the information known to the police in this situation, believe that there's reasonable suspicion? We are not here to give a grade to the Philadelphia Police Department as to what happened here. Obviously the dispatcher could have asked one more question and said, what's your name? And added that to the record. But the question is would a reasonable police officer, knowing everything we know here, somebody says they're in a cab, they're at a specific spot on the street, they're reporting recent criminal activity, they say they are continuing to follow the person, the car is then found on that exact trajectory, would a reasonable officer say, you know, there's a reasonable suspicion here, I'm at least going to stop this car and see what's going on? And the answer is, of course. And he took, I mean, this night errant amicus also had x-ray vision, didn't he? Because I think he saw the defendant take a gun, which he thought looked like a Glock, out of the center console and put it in the side pocket. So, I mean, he's really seen a lot of stuff. Well, you can really parse, these two pages have a lot of information that this person imparted. So there's no suggestion that he left the gun at the Hess station, there's no suggestion that it wasn't in the car with him. You can also infer that this man was very close by, he saw the gun. That's what I'm saying, the x-ray vision. Or he was just at the next tank and he saw exactly what was happening. What about Mr. Kogan's argument that you did take steps, he refers to 30 to 36 of the appendix, can you address his argument? Well, sir, there weren't yeoman steps as he said, but there is a very brief transcript where an officer says let's send somebody by the gas station and see if we can figure it out. Other than that, we know nothing from the record about what steps were taken. This cab was told to drive off for his safety, it was a reasonable thing the dispatcher told him to do, and he left and he has not been found since. But again, that's what this court addresses in Ballantyne. We're not here to say, to impose any kind of test on what the police have to do. We're here to say does the fact that he was willing to be identified and not going out his way to avoid it, give us an addition of reliability? And the answer is absolutely yes. Well, we don't know. If the dispatcher said what's your name, he might have said I don't want to give you my name. So that's an assumption we can't make. We can't. We have to look at the facts as they are. I'm still puzzled as to what magic accrues when the dispatcher says what's your name? And he says Bob Jones. And the dispatcher says what's your phone number? I don't see how that makes this complainant more or less reliable. I completely agree. And I don't accept my friend Mr. Kogan's argument that by saying Bob Jones suddenly that's a better fact than saying I'm in a green cab, which to me in this situation I think is more important. You can infer that saying I'm in a green cab, this person is trying to give information to the police so that they can see him right where he is and make the stop that he wants them to make. Either fact could be wrong. There's no question that under the reasonable suspicion test that the Supreme Court has given us and this court has implemented that people are still incorrectly stopped. And that's because it's not a preponderance of the evidence test. It's not a reasonable doubt test. But it's enough to allow this minimal intrusion so that the police can conduct an investigation. Here it happened to be right. And they got their man. Thank you very much. Thank you. Well argued. We'll take the case under advisement. The clerk will join the jury in court.